IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.  2:20-cv-768 |
| | ) | |
| v. | ) | |
| | ) | |
| DIAMOND DRUGS, INC., d/b/a | ) | |
| DIAMOND PHARMACY SERVICES, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

AND NOW comes the United States of America, by its counsel, Scott W. Brady, United States Attorney for the Western District of Pennsylvania, and Paul E. Skirtich, Assistant United States Attorney for said District, and files its original Complaint based on the following:

## I.     INTRODUCTION

1.      Plaintiff is the United States of America, and it brings this action on behalf of and at the request of the Drug Enforcement Administration ("DEA").

2.      The DEA is a Federal drug law-enforcement agency charged by Congress to oversee and ensure that all drug distributorships that handle and ship controlled substances are properly registered with the Agency, among other duties.  Additionally, the DEA is empowered to audit and review records of drug distributorships to ensure compliance with all DEA regulations, including but not limited to, when registrants ship allowed controlled substances to registered locations.

3.      To perform its duties, the DEA conducts periodic inspections of drug distributorships during which the DEA scrutinizes all pertinent invoices, logs, ledgers, account files, and any other related documents to determine whether a registrant has complied with all

applicable provisions of the Controlled Substances Act, 21 U.S.C. § 801 *et seq.* (hereinafter the "CSA") and/or the Code of Federal Regulations, 21 C.F.R. § 1300 *et seq.* (hereinafter the "CFR").

4.     The Defendant, "Diamond Drugs, Inc.," d/b/a "Diamond Pharmacy Services" ("Diamond"), is a privately-held corporation.   "Diamond Drugs, Inc." is comprised of three (3) separate subdivisions:  a drug distributorship, a mail-order pharmacy, and a manufacturer, all of which are registered with the DEA.

5.     "Diamond Drugs, Inc." is one of the nation's largest specialty pharmacy services whose customers include state prisons and county jail infirmaries located throughout the United States.

6.     "Diamond Pharmacy Services" is a drug distributorship registered under DEA # RD0311100 to handle controlled substances in Schedules II, IIN, III, IIIN, IV, and V, and is located at 665 Kolter Drive, Indiana County, Indiana, Pennsylvania 15701.  On April 16, 2004, "Diamond" became a DEA registrant as a distributor.

7.     "Diamond Pharmacy Service" is a DEA Registrant as a mail-order pharmacy that is authorized to handle controlled substances in Schedules II, IIN, III, IIIN, IV, and V, and is located at 645 Kolter Drive, Indiana County, Indiana, Pennsylvania 15701.

8.     "Remedy Repack" is a DEA Registrant as a manufacturer (repacker/relabeler of controlled substances) authorized to handle controlled substances in Schedules II, IIN, III, IIIN, IV, and V, and is located at 625 Kolter Drive, Indiana County, Indiana, Pennsylvania 15701.

9.     The United States of America brings this civil enforcement action seeking penalties and injunctive relief against Defendant for violating the CSA and its implementing regulations.

10.     Defendant, Diamond Pharmacy Services, is registered with the DEA, under DEA # RD0311100, as a distributor of Schedules II, IIN, III, IIIN, IV, and V controlled substances, and

engaged in repeated and systemic violations of the CSA and other pertinent DEA Regulations when it unlawfully shipped controlled substances to non-registered locations or to registrants not authorized to possess certain controlled substances, and then failed to meet pertinent recordkeeping requirements.

## II.     JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and 47 U.S.C. § 504(a).

12.     Venue is proper under 28 U.S.C. §§ 1355(b), 1391(b), and 1395(a), and 47 U.S.C. § 504(a) because Defendant operates its business within this District, and the acts and/or omissions giving rise to this civil action occurred within this District.

## III.     STATUTORY AND REGULATORY BACKGROUND

13.     In order to regulate the distribution of controlled substances, Congress authorized the Attorney General of the United States, or his delegate, including the DEA, to promulgate and enforce any rules, regulations, and procedures which are deemed necessary and appropriate. *See* 21 U.S.C. §§ 871(a) and (b).

14.     Controlled substances are highly regulated by the DEA, and each controlled substance is placed into one of five schedules, known as Schedules I, II, III, IV, and V. IIN (Schedule II non-narcotic) and IIIN (Schedule III non-narcotic) are additional categories within Schedules II and III. *See* 21 U.S.C. § 812(a).

15.     All drug distributors must adhere to and follow the regulations as listed in 21 U.S.C. Part C, which includes §§ 821-832. The prohibited acts of this title subject to civil punishment are listed in 21 U.S.C. § 842.

16.     A separate registration is required with the DEA for each principal place of business or professional practice at one general physical location where controlled substances are manufactured, distributed, imported, exported, or dispensed by a person.  *See* 21 C.F.R. § 1301.12(a).

17.     Before distributing a shipment containing controlled substances to any registered location, whether the registrant knows that the person or entity is registered or not, the registrant must make a good-faith inquiry with the DEA or the appropriate "State-controlled substance registration agency," if any, to determine that the proposed receiver of a controlled substance is registered to possess it.  *See* 21 C.F.R. § 1301.74(a).  The Commonwealth of Pennsylvania does not maintain a controlled substance registration agency.  The DEA, however, provides an online national DEA registration validation system that allows verification of DEA registration information of any DEA registrant.  This "validation system" went online sometime in 2006.

18.     When an order for a Schedule II-V controlled substance is received by a drug distributor, like "Diamond," that distributor must make a good-faith effort to determine if the purchaser is a DEA registrant for the specific schedules requested for purchase.

19.     A drug distributor, including but not limited to "Diamond," is required to verify that the registered location matches the intended shipping address.

20.     If the addresses are found to match, a drug distributor, including but not limited to "Diamond," is required to verify the ability of the soliciting DEA registrant/purchaser to purchase that specific controlled substance(s) under the relevant state license.

21.     A drug distributor, including but not limited to "Diamond," should also verify the business activity of the DEA registrant to ensure that the registrant has the proper authority to purchase that type of controlled substance.  "Verification," pursuant to the statute, requires that a

4

distributor:  (a) before distributing a controlled substance to any person whom the registrant does not know to be registered to possess the controlled substance, shall make a good-faith inquiry either with the Administration [DEA] or with the appropriate State-controlled substances registration agency, if any, to determine that the person is registered to possess the controlled substance; and (b) the registrant shall design and operate a system to disclose to the registrant "suspicious orders" of controlled substances.  The registrant shall inform the Field Division Office of the Administration [DEA] in his/her area of "suspicious orders" when discovered by the registrant.  "Suspicious orders" include orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency.  Likewise, a distributor is also required to know that if their customer is a specialized treatment entity, such as a narcotic treatment facility, they should only purchase controlled substances that are FDA-approved for the treatment of narcotic addiction, and further requires that distributor to design and operate a system that would alert them to attempted purchases that do not fit their customer's normal pattern (i.e., a narcotic treatment program purchasing codeine).  *See* 21 C.F.R. § 1301.74(a), (b).

22.     If the drug distributor determines that the addresses match and the purchaser is properly able to purchase the particular controlled substance(s), the drug distributor can then lawfully distribute and ship that order.

23.     Moreover, every "registrant" is required to keep complete and accurate records of controlled substances that are delivered to another "registrant."  *See* 21 C.F.R. § 1304.21(a).

24.     Each person registered or authorized to distribute controlled substances shall maintain records with the same information required of manufacturers.  *See* 21 C.F.R. § 1304.22(b).  "Registrants" are required to maintain all required records for two (2) years. *See* 21 C.F.R. § 1304.04(a).

25.     It is unlawful for any "registrant" to refuse or negligently fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required under this title or title III.  *See* 21 U.S.C. § 842(a)(5).

### IV.     STATEMENT OF THE CASE

#### A.     June 2014 DEA Audit and Investigation

26.     In keeping with their duties, the DEA conducts periodic regulatory reviews of drug distributors to account for controlled substances and to ensure compliance with Federal laws and DEA Regulations concerning the distribution of controlled substances to registered locations, among other purposes.

27.     In preparation for and in follow-up to periodic audits, DEA diversion investigators routinely review DEA databases used to track and monitor the ordering, receipt, and disposition of controlled substances of drug distributorships, such as "Diamond."

28.     Consistent with their duties as described above, from June 19, 2014, to on or about June 24, 2014, personnel from the DEA conducted a periodic audit and review of "Diamond Pharmacy Services" at its warehouse located at 665 Kolter Drive, Indiana County, Indiana, Pennsylvania 15701.  The purpose of the audit was to inspect records, from June 19, 2013, through June 19, 2014, including but not limited to, sales invoices required to be kept by Diamond.  *See* 21 C.F.R. § 1304.21(a); *see* ¶¶ 3, 23 *supra.*

#### B.     Shipments to Unregistered Locations

29.     DEA's audit of "Diamond's" sales records and invoices of controlled substances revealed that between June 19, 2013, and June 19, 2014, "Diamond" failed to accurately record one hundred thirty-seven (137) separate distributions to six (6) different customers whose shipping addresses were not the registered locations of the DEA registration number utilized for the

transactions.  *See* Table of Distributions to Various Registrants at Incorrect Addresses, attached hereto and marked as Exhibit A.

30.     Between June 19, 2013, and June 19, 2014, "Diamond" had continual access to the online national DEA registration validation system that allows verification of DEA registration information of any DEA registrant.

C.     **May 2015 to May 2016 Shipments to Mid-Level Practitioners ("MLPs")**

31.     DEA registrants include "mid-level practitioners" as well as others who are able to purchase certain controlled substances as authorized by their specific job duties and the authority of their state.

32.     "Mid-level practitioner" means an individual practitioner, other than a physician, dentist, veterinarian, or podiatrist, who is licensed, registered, or otherwise permitted by the United States or the jurisdiction in which he/she practices, to dispense a controlled substance in the course of professional practice.  Examples of mid-level practitioners include, but are not limited to, health-care providers such as nurse practitioners, nurse midwives, nurse anesthetists, clinical nurse specialists, and physician assistants who are authorized to dispense controlled substances by the State in which they practice.  21 C.F.R. § 1300.01(b).

33.     Health professionals who are certified as an Advanced Registered Nurse Practitioner (ARNP); Advanced Practice Registered Nurse (APRN); Advanced Practice Nurse (APN); Nurse Practitioner (NP); one who holds a Masters of Science in Nursing (MSN); a Registered Nurse Advanced Practice Nurse-Certified (RNAPN-C); and a Registered Physician Assistant-Certified (RPA-C) fall under the category of Nurse Practitioner or Physician's Assistant under 21 C.F.R. § 1300.01(b), and are duly labeled "Mid-Level Practitioner" (MLP).  Notably,

each DEA registration lists the registrant's "Business Activity," so all MLPs have the business activity designator of "MLP."

34.     States have the authority and ability to limit what controlled substances can be lawfully ordered or received by the MLPs within their jurisdiction. *See* 21 C.F.R. § 1307.02.

35.     The DEA abides by the more restrictive language of either Federal or state law or regulation concerning the shipment of controlled substances to MLPs and, in general, upholds whatever is more restrictive. *See* 21 C.F.R. § 1307.02 ("Application of State law and other Federal law. Nothing in this chapter shall be construed as authorizing or permitting any person to do any act which such person is not authorized or permitted to do under other Federal laws or obligations under international treaties, conventions or protocols, or under the law of the State in which he/she desires to do such act nor shall compliance with such parts be construed as compliance with other Federal or State laws unless expressly provided in such other laws.").

36.     The MLPs in Kentucky (KY) are allowed to prescribe only a Schedule II, IIN, III, IIIN, IV, and V controlled substance. In Louisiana (LA), MLPs are allowed to prescribe a Schedule III, IIIN, IV, and V controlled substance, and can prescribe and dispense a Schedule II and IIN controlled substance for "Attention Deficit Disorder" only. The pertinent statute in Nebraska (NE) limits MLPs to only prescribe a Schedule III, IIIN, IV, and V controlled substance. The State of New Jersey (NJ) mandates that MLPs are allowed to prescribe a Schedule II, IIN, III, IIIN, IV and/or V controlled substance. Finally, MLPs in New York (NY) are allowed to prescribe a Schedule II, IIN, III, IIIN, IV, and/or V controlled substance. *See*, https://www.deadiversion.usdoj.gov/drugreg/practioners/mlp_by_state.pdf.

37.     Between May 5, 2015, and May 25, 2016, "Diamond" had continual access to the online, national DEA registration validation system that allows verification of DEA registration

information of any DEA registrant.  Moreover, the first character of a DEA registration number defines the registrant type/business activity.  For example, the "M" in the DEA registration number denotes a "Mid-Level Practitioner," including but not limited to, Nurse Practitioner (NP) and Physician's Assistant (PA).

38.     It is unlawful for any "registrant" to refuse or negligently fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required under this title or title III.  *See* 21 U.S.C. § 842(a)(5).

39.     Subsequent examination of "Diamond's" records and further investigation by DEA personnel showed that between May 5, 2015, and May 25, 2016, on two hundred ninety-two (292) occasions, "Diamond" shipped controlled substances to nineteen (19) MLPs in five (5) different states – Kentucky, Louisiana, Nebraska, New Jersey, and New York – who ordered and received Schedule III-V controlled substances, when these same MLPs were not authorized by their respective states to either order or receive those particular controlled substances, and failed to keep accurate records of those two hundred ninety-two (292) shipments, as those shipments were inaccurately reported on DEA reports.  *See* Table of Shipments to MLPs, attached hereto and marked as Exhibit B.

### D.     August 2015 Codeine Shipments to a Narcotic Treatment Program

40.     "Correctional Health Services" (hereinafter referred to as "Correctional") is a DEA registrant with a listed business activity as a detoxification and maintenance facility, located at 201 South 4th Avenue in Phoenix, Maricopa County, Arizona 85003.

41.     "Correctional" is a facility which is allowed to order controlled substances, including but not limited to, some Schedule III controlled substances that are approved by the Federal Drug Administration ("FDA") to treat narcotic addiction (opioid dependence), including

but not limited to Buprenorphine, which trades as "Suboxone."  [*See* 42 C.F.R. Ch. 1, Subchapter A, Part 8, Subpart C, §§ 8.12(h)(1) and (h)(2)(i-iii)].

42.     Codeine, a Schedule III controlled substance, is not approved by the FDA for use and treatment at detoxification and maintenance facilities which house narcotic-addicted persons. [*See* 42 C.F.R. Ch. 1, Subchapter A, Part 8, Subpart C, §§ 8.12(h)(1) and (h)(2)(i-iii)].

43.     It is unlawful for any "registrant" to refuse or negligently fail to make, keep, or furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required under this title or title III.  *See* 21 U.S.C. § 842(a)(5).

44.     On August 26, 2015, personnel at "Diamond" sent one (1) shipment of Schedule III Codeine to Correctional, a registrant which was not authorized to order or obtain the Codeine, and "Diamond" negligently failed to keep accurate records concerning that shipment of Codeine to Correctional.  *See* Table of Codeine Sales to Correctional Health Services, attached hereto and marked as Exhibit C.

## COUNT I

45.     The United States realleges and readopts the allegations set forth in paragraphs 1 through 44 as if fully rewritten herein.

46.     Based on the above, between May 22, 2014, and June 18, 2014, "Diamond Pharmacy Services," a DEA registrant licensed to ship controlled substances, negligently failed to make or keep any record, report, notification, declaration, order or order form, statement, invoice, or other information required pursuant to 21 U.S.C. §§ 822(e)(1) and/or 827(a)(3), when "Diamond Pharmacy Services" sent four (4) shipments of controlled substances on various dates – as detailed in the Table attached to the Complaint as Exhibit A – to DEA Registrant Lisa Dorsey, to an address other than the registered location of the registrant, and thereby failed to have at all times complete,

current, and accurate records of orders of Schedule III-V controlled substances received and shipped during the above-noted time frame, in violation of 21 U.S.C. § 842(a)(5).  Each such shipment was a violation of 21 U.S.C. § 842(a)(5), and is subject to a civil penalty of up to $10,000.00 for each violation pursuant to 21 U.S.C. § 842(c)(1)(B)(i).

## COUNT II

47.     The United States realleges and readopts the allegations set forth in paragraphs 1 through 46 as if fully rewritten herein.

48.     Based on the above, between June 25, 2013, and June 17, 2014, "Diamond Pharmacy Services," a DEA registrant licensed to ship controlled substances, negligently failed to make or keep any record, report, notification, declaration, order or order form, statement, invoice, or other information required pursuant to 21 U.S.C. §§ 822(e)(1) and/or 827(a)(3), when "Diamond Pharmacy Services" sent forty-eight (48) shipments of controlled substances on various dates – as detailed in the Table attached to the Complaint as Exhibit A – to DEA Registrant William Taylor-Fithian, to an address other than the registered location of the registrant, and thereby failed to have at all times complete, current, and accurate records of orders of Schedule III-V controlled substances received and shipped during the above-noted time frame, in violation of 21 U.S.C. § 842(a)(5).  Each such shipment was a violation of 21 U.S.C. § 842(a)(5), and is subject to a civil penalty of up to $10,000.00 for each violation pursuant to 21 U.S.C. § 842(c)(1)(B)(i).

## COUNT III

49.     The United States realleges and readopts the allegations set forth in paragraphs 1 through 48 as if fully rewritten herein.

50.     Based on the above, between April 14, 2014, and June 19, 2014, "Diamond Pharmacy Services," a DEA registrant licensed to ship controlled substances, negligently failed to

make or keep any record, report, notification, declaration, order or order form, statement, invoice, or other information required pursuant to 21 U.S.C. §§ 822(e)(1) and/or 827 (a)(3), when "Diamond Pharmacy Services" sent forty-four (44) shipments of controlled substances on various dates – as detailed in the Table attached to the Complaint as Exhibit A – to DEA Registrant Jackson (FL) Memorial Medical Center, to an address other than the registered location of the registrant, and thereby failed to have at all times complete, current, and accurate records of orders of Schedule III-V controlled substances received and shipped during the above-noted time frame, in violation of 21 U.S.C. § 842(a)(5).  Each such shipment was a violation of 21 U.S.C. § 842(a)(5), and is subject to a civil penalty of up to $10,000.00 for each violation pursuant to 21 U.S.C. § 842(c)(1)(B)(i).

## COUNT IV

51.     The United States realleges and readopts the allegations set forth in paragraphs 1 through 50 as if fully rewritten herein.

52.     Based on the above, between January 28, 2014, and June 17, 2014, "Diamond Pharmacy Services," a DEA registrant licensed to ship controlled substances, negligently failed to make or keep any record, report, notification, declaration, order or order form, statement, invoice, or other information required pursuant to 21 U.S.C. §§ 822(e)(1) and/or 827(a)(3), when "Diamond Pharmacy Services" sent fifteen (15) shipments of controlled substances on various dates – as detailed in the Table attached to the Complaint as Exhibit A – to DEA Registrant Santa Fe (N.M.) County, to an address other than the registered location of the registrant, and thereby failed to have at all times complete, current, and accurate records of orders of Schedule III-V controlled substances received and shipped during the above-noted time frame, in violation of 21 U.S.C.

§ 842(a)(5). Each such shipment was a violation of 21 U.S.C. § 842(a)(5), and is subject to a civil penalty of up to $10,000.00 for each violation pursuant to 21 U.S.C. § 842(c)(1)(B)(i).

### COUNT V

53.     The United States realleges and readopts the allegations set forth in paragraphs 1 through 52 as if fully rewritten herein.

54.     Based on the above, between July 17, 2013, and May 28, 2014, "Diamond Pharmacy Services," a DEA registrant licensed to ship controlled substances, negligently failed to make or keep any record, report, notification, declaration, order or order form, statement, invoice, or other information required pursuant to 21 U.S.C. §§ 822(e)(1) and/or 827(a)(3), when "Diamond Pharmacy Services" sent twenty-five (25) shipments of controlled substances on various dates – as detailed in the Table attached to the Complaint as Exhibit A – to DEA Registrant St. Tammany's (LA) Parish Sheriff's Office, to an address other than the registered location of the registrant, and thereby failed to have at all times complete, current, and accurate records of orders of Schedule III-V controlled substances received and shipped during the above-noted time frame, in violation of 21 U.S.C. § 842(a)(5). Each such shipment was a violation of 21 U.S.C. § 842(a)(5), and is subject to a civil penalty of up to $10,000.00 for each violation pursuant to 21 U.S.C. § 842(c)(1)(B)(i).

### COUNT VI

55.     The United States realleges and readopts the allegations set forth in paragraphs 1 through 54 as if fully rewritten herein.

56.     Based on the above, on or about April 24, 2014, "Diamond Pharmacy Services," a DEA registrant licensed to ship controlled substances, negligently failed to make or keep any record, report, notification, declaration, order or order form, statement, invoice, or other

information required pursuant to 21 U.S.C. §§ 822(e)(1) and/or 827(a)(3), when "Diamond Pharmacy Services" sent a shipment of controlled substances – as detailed in the Table attached to the Complaint as Exhibit A – to DEA Registrant Richard E. Wood, Jr., to an address other than the registered location of the registrant, and thereby failed to have at all times complete, current, and accurate records of orders of Schedule III-V controlled substances received and shipped during the above-noted time frame, in violation of 21 U.S.C. § 842(a)(5).  Each such shipment was a violation of 21 U.S.C. § 842(a)(5), and is subject to a civil penalty of up to $10,000.00 for each violation pursuant to 21 U.S.C. § 842(c)(1)(B)(i).

## COUNT VII

57.     The United States realleges and readopts the allegations set forth in paragraphs 1 through 56 as if fully rewritten herein.

58.     Based on the above, between May 11, 2015, and November 5, 2015, "Diamond Pharmacy Services," a DEA registrant licensed to ship controlled substances, negligently failed to make or keep any record, report, notification, declaration, order or order form, statement, invoice, or other information required pursuant to 21 U.S.C. § 827(a)(3), when "Diamond Pharmacy Services" sent twenty-nine (29) shipments of controlled substances on various dates – as detailed in the Table attached to this Complaint and marked as Exhibit B – to seven (7) DEA Registrants, Denise A. Burkett, Shellie Conyers-Votaw, Courtney R. Elam, Janice L. Garth, Tyara L. Hughes, Christina C. Lyons, and Lauren Serey, "Mid-Level Practitioners (MLPs)" in the Commonwealth of Kentucky, who were not authorized by Kentucky to order and receive said controlled substances, conduct which caused "Diamond Pharmacy Services" to fail to have at all times complete, current, and accurate records of orders of Schedule III controlled substances received and shipped during the above-noted time frame, in violation of 21 U.S.C. § 842(a)(5).  Each such

14

shipment before November 2, 2015 was a violation of 21 U.S.C. § 842(a)(5), and is subject to a civil penalty of up to $10,000.00 for each violation, while each shipment after November 2, 2015 was a violation of 21 U.S.C. § 842(a)(5) and is subject to a civil penalty of up to $15,040.00 for each violation, pursuant to 21 U.S.C. § 842(c)(1)(B)(i), as modified by Section 701 of the Bipartisan Budget Act of 2015, Public Law 114–74 (Nov. 2, 2015) ("BBA"), 28 U.S.C. § 2461 note.

## COUNT VIII

59.      The United States realleges and readopts the allegations set forth in paragraphs 1 through 58 as if fully rewritten herein.

60.      Based on the above, on or about May 12, 2016, "Diamond Pharmacy Services," a DEA registrant licensed to ship controlled substances, negligently failed to make or keep any record, report, notification, declaration, order or order form, statement, invoice, or other information required pursuant to 21 U.S.C. § 827(a)(3), when "Diamond Pharmacy Services" sent a shipment of controlled substances on the above date – as detailed in the Table attached to this Complaint and marked as Exhibit B – to DEA Registrant Charlene T. Johnson, a "Mid-Level Practitioner (MLP)" in the State of Louisiana, who was not authorized by Louisiana to order and receive said controlled substances, conduct which caused "Diamond Pharmacy Services" to fail to have at all times complete, current, and accurate records of the orders of Schedule III controlled substances received and shipped on the above-noted date, in violation of 21 U.S.C. § 842(a)(5). Each such shipment was a violation of 21 U.S.C. § 842(a)(5), and is subject to a civil penalty of up to $15,040.00 for each violation, pursuant to 21 U.S.C. § 842(c)(1)(B)(i), as modified by Section 701 of the Bipartisan Budget Act of 2015, Public Law 114–74 (Nov. 2, 2015) ("BBA"), 28 U.S.C. § 2461 note.

## COUNT IX

61.     The United States realleges and readopts the allegations set forth in paragraphs 1 through 60 as if fully rewritten herein.

62.     Based on the above, between October 13, 2015, and February 11, 2016, "Diamond Pharmacy Services," a DEA registrant licensed to ship controlled substances, negligently failed to make or keep any record, report, notification, declaration, order or order form, statement, invoice, or other information required pursuant to 21 U.S.C. § 827(a)(3), when "Diamond Pharmacy Services" sent three (3) shipments of controlled substances on various dates – as detailed in the Table attached to this Complaint and marked as Exhibit B – to a DEA Registrant, Kevin A. Witcher, a "Mid-Level Practitioner (MLP)" in the State of Nebraska, who was not authorized by Nebraska to order and receive said controlled substances, conduct which caused "Diamond Pharmacy Services" to fail to have at all times complete, current, and accurate records of orders of Schedule III controlled substances received and shipped during the above-noted time frame, in violation of 21 U.S.C. § 842(a)(5).  Each such shipment before November 2, 2015 was a violation of 21 U.S.C. § 842(a)(5), and is subject to a civil penalty of up to $10,000.00 for each violation, while each shipment after November 2, 2015 was a violation of 21 U.S.C. § 842(a)(5) and is subject to a civil penalty of up to $15,040.00 for each violation, pursuant to 21 U.S.C. § 842(c)(1)(B)(i), as modified by Section 701 of the Bipartisan Budget Act of 2015, Public Law 114–74 (Nov. 2, 2015) ("BBA"), 28 U.S.C. § 2461 note.

## COUNT X

63.     The United States realleges and readopts the allegations set forth in paragraphs 1 through 62 as if fully rewritten herein.

64.    Based on the above, between May 12, 2015, and May 24, 2016, "Diamond Pharmacy Services," a DEA registrant licensed to ship controlled substances, negligently failed to make or keep any record, report, notification, declaration, order or order form, statement, invoice, or other information required pursuant to 21 U.S.C. § 827(a)(3), when "Diamond Pharmacy Services" sent two hundred fifty-seven (257) shipments of controlled substances on various dates – as detailed in the Table attached to this Complaint and marked as Exhibit B – to nine (9) DEA Registrants, Judith L. Bender, Joseph P. Bentivegna, Sabrina Renea Brown Oliver, Melissa Curtis, Darlene P. Deamer, Christine M. Hartranft, Lisa R. Mills, Monica M. Tsakiris, and Stacy L. Williams Hall, "Mid-Level Practitioners (MLPs)" in the State of New Jersey, who were not authorized by New Jersey to order and receive said controlled substances, conduct which caused "Diamond Pharmacy Services" to fail to have at all times complete, current, and accurate records of orders of Schedule III controlled substances received and shipped during the above-noted time frame, in violation of 21 U.S.C. § 842(a)(5).  Each such shipment before November 2, 2015 was a violation of 21 U.S.C. § 842(a)(5), and is subject to a civil penalty of up to $10,000.00 for each violation, while each shipment after November 2, 2015 was a violation of 21 U.S.C. § 842(a)(5) and is subject to a civil penalty of up to $15,040.00 for each violation, pursuant to 21 U.S.C. § 842(c)(1)(B)(i), as modified by Section 701 of the Bipartisan Budget Act of 2015, Public Law 114–74 (Nov. 2, 2015) ("BBA"), 28 U.S.C. § 2461 note.

## COUNT XI

65.    The United States realleges and readopts the allegations set forth in paragraphs 1 through 64 as if fully rewritten herein.

66.    Based on the above, on May 19, 2015, and June 8, 2015, "Diamond Pharmacy Services," a DEA registrant licensed to ship controlled substances, negligently failed to make or

keep any record, report, notification, declaration, order or order form, statement, invoice, or other information required pursuant to 21 U.S.C. § 827(a)(3), when "Diamond Pharmacy Services" sent two (2) shipments of controlled substances on the above dates – as detailed in the Table attached to this Complaint and marked as Exhibit B – to a DEA Registrant, John H. Alden, a "Mid-Level Practitioner (MLP)" in the State of New York, who was not authorized by New York to order and receive said controlled substances, conduct which caused "Diamond Pharmacy Services" to fail to have at all times complete, current, and accurate records of orders of Schedule III controlled substances received and shipped during the above-noted time frame, in violation of 21 U.S.C. § 842(a)(5). Each such shipment was a violation of 21 U.S.C. § 842(a)(5), and is subject to a civil penalty of up to $10,000.00 for each violation pursuant to 21 U.S.C. § 842(c)(1)(B)(i).

## COUNT XII

67.    The United States realleges and readopts the allegations set forth in paragraphs 1 through 66 as if fully rewritten herein.

68.    Based on the above, on August 26, 2015, "Diamond Pharmacy Services," a DEA registrant licensed to ship controlled substances, negligently failed to make or keep any record, report, notification, declaration, order or order form, statement, invoice, or other information required pursuant to 21 U.S.C. § 827(a)(3), when its personnel shipped Schedule III Codeine to Correctional Health Services, Maricopa County, Arizona; that is, it failed to have at all times complete, current, and accurate records of that shipment of Codeine, a Schedule III controlled substance not approved by the FDA for use in a detoxification and maintenance facility, in violation of 21 U.S.C. § 842(a)(5). Each shipment was a violation of 21 U.S.C. § 842(a)(5), and is subject to a civil penalty of up to $10,000.00 for each violation pursuant to 21 U.S.C. § 842(c)(1)(B)(i).

## PRAYER FOR RELIEF

WHEREFORE, the United States of America respectfully requests this Court to:

1.      Enter judgment for the United States on Counts I-XII of the Complaint;

2.      Impose a civil penalty on Defendant "Diamond Drugs, Inc., d/b/a Diamond Pharmacy Services," of up to Ten Thousand Dollars ($10,000.00) for each shipment before November 2, 2015, which was a violation of 21 U.S.C. § 842(a)(5), and impose a civil penalty of up to Fifteen Thousand Forty Dollars ($15,040.00) for each shipment after November 2, 2015, which was a violation of 21 U.S.C. § 842(a)(5), pursuant to 21 U.S.C. § 842(c)(1)(B)(i), as modified by Section 701 of the Bipartisan Budget Act of 2015, Public Law 114–74 (Nov. 2, 2015) ("BBA"), 28 U.S.C. § 2461 note, published in the Federal Register, Vol. 83, No. 19, Jan. 29, 2018, "Rules and Regulations," pp. 3944-48, and in Vol. 84, No. 66, Apr. 5, 2019, "Rules and Regulations," pp. 13520-25, the total amount of violations to be determined at trial;

3.      Award the United States its costs in this action; and

4.      Grant such other and further relief to the United States that this Court would deem appropriate.

Dated:  May 27, 2020                                   Respectfully submitted,

                                                       SCOTT W. BRADY
                                                       United States Attorney


                                        By:    /s/ Paul E. Skirtich
                                               PAUL E. SKIRTICH
                                               Assistant United States Attorney
                                               Joseph F. Weis, Jr. U.S. Courthouse
                                               700 Grant Street, Suite 4000
                                               Pittsburgh, PA 15219
                                               Tel.:    (412) 894-7418
                                               Email: Paul.Skirtich@usdoj.gov
                                               PA ID No. 30440